IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) *ex rel.* ) LISA MADIGAN, Attorney General, ) ) and ) ) MARY KATE CALLAHAN, ) By her Parent and Next Friend, ) JOANNE CALLAHAN, ) ) Plaintiffs, ) ) v. ) ) ILLINOIS HIGH SCHOOL ASSOCIATION, ) an unincorporated association, ) ) Defendant. ) | Case Number: 12-cv-3758  Judge: |

## COMPLAINT

Plaintiff, the People of the State of Illinois, by their attorney, Lisa Madigan, Attorney General of the State of Illinois and Plaintiff, Mary Kate Callahan ("Mary Kate"), by her Parent and Next Friend Joanne Callahan, and by her attorneys, Alan M. Goldstein, Amy F. Peterson, and Lauren M. Lowe of Equip for Equality, bring this action against Defendant Illinois High School Association and allege as follows:

### I. INTRODUCTION

1. This is an action for injunctive relief brought against Defendant for violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Titles II and III of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12132, 12182 ("ADA"). The Office of the Attorney General ("OAG") and Mary Kate seek an injunction ordering the Defendant, the Illinois High School Association ("IHSA"), to cease unlawful discrimination

against athletes with disabilities and to adopt policies and procedures to ensure that student athletes with disabilities have full and equal opportunities to compete under IHSA rules and in all IHSA-sponsored and sanctioned events and competitions.

2. Mary Kate is a sixteen-year-old high school student with physical disabilities, including lower-limb paralysis related to the impairment of transverse myelitis. She is planning on graduating from high school in 2013. Mary Kate is a committed athlete who focuses primarily on swimming and track. She has been denied the opportunity to compete as part of her team in the high school state meet, interscholastic sectional meets, and local and qualifying meets for the sports of track and field and swimming. Mary Kate is unable to qualify for the state meet due to the lack of IHSA standards for student athletes with disabilities despite the wide use of such standards in other states and in disability sports programs, including the Paralympics; her disability prevents her from meeting the qualifying standards that IHSA has set for students without disabilities. Mary Kate is unable to earn points for her team in competitions against other schools (interscholastic competitions) due to the failure of IHSA to adopt a policy permitting athletes with disabilities to earn points in competitions against other schools.

3. Mary Kate desires the opportunity to qualify for the state championship meets in swimming and track during the 2012-2013 sports season. She also desires an opportunity to earn points for her team in all interscholastic competitions in swimming and track during the 2012-2013 sports season. These goals will not be possible unless IHSA makes reasonable modifications to its rules, policies, and procedures. Swimming season will occur during the fall of 2012 and the track season will occur during the spring of 2013.

4. There are some students with disabilities, including Mary Kate, who are permitted by their high schools to participate in local interscholastic meets. Additionally, some students

with disabilities participate in (non-high school) alternative adaptive sports programs. However, all of these students are excluded from participating in local, regional, sectional, and state championship meets on behalf of their high schools due to the lack of qualifying standards for state championship meets for students with disabilities, and the lack of standards by which they can earn points at interscholastic competitions.

5. By excluding students with disabilities from competing in state meets and from fully participating in team competitions against other schools, the IHSA has discriminated against Mary Kate and other students with disabilities in violation of the ADA and the Rehabilitation Act. IHSA has unlawfully discriminated against these students by failing to provide them with the full and equal opportunity to participate in sports in an integrated setting despite the fact that these students are qualified to do so.

6. IHSA has also violated federal law by failing to conduct a proper individualized assessment of the ability of Mary Kate and other students with disabilities to participate, failing to engage in the interactive process to determine if any reasonable accommodations or modifications are required, failing to provide any reasonable accommodations or modifications, failing to provide any appeal or grievance opportunities, and otherwise failing to comply with the ADA and Rehabilitation Act.

7. Members of IHSA include 98% of Illinois public and private high schools, which must rely on IHSA to, among other activities, organize and administer all state championship meets.

## II. PARTIES

8. Plaintiff, the People of the State of Illinois, by Lisa Madigan, the duly elected Attorney General for the State of Illinois ("Attorney General"), is charged, *inter alia*, with the

*parens patriae* authority to pursue claims under the Americans with Disabilities Act and the Rehabilitation Act on behalf of the People of the State of Illinois.

9. Plaintiff Mary Kate Callahan is a sixteen-year-old girl with a residence in LaGrange, Cook County, Illinois and attends Fenwick High School in Oak Park, Cook County, Illinois.

10. Joanne Callahan is the Parent and Next Friend of Mary Kate Callahan, with a residence in LaGrange, Cook County, Illinois.

11. Defendant Illinois High School Association is an unincorporated association with its principal headquarters at 2715 McGraw Drive, Bloomington, Illinois 61704-6011.

## III.  JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

13. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1391(b) and (c) because: Plaintiff Mary Kate resides and attends high school in the Northern District of Illinois; Defendant sets standards and operates sectional and qualifying meets in Cook County; and Defendant has sufficient minimum contacts with the venue and a substantial portion of the events or omissions giving rise to these claims occurred in the venue.

## IV.  FACTS

14. Mary Kate is a sixteen-year-old girl with lower limb paralysis due to acquiring transverse myelitis when she was less than one year old, substantially limiting her in the major bodily functions of her musculoskeletal system and her special sense organs and skin; Mary Kate is also substantially limited in one or more major life activities including, but not limited to, walking, bending, and standing.

15. Mary Kate is a qualified individual with a disability under Section 504 of the Rehabilitation Act and the ADA.

16. Mary Kate has a record of a disability under the ADA and Rehabilitation Act.

17. Mary Kate is enrolled as a student at Fenwick High School in Cook County, Illinois.

18. While Mary Kate is a very independent sixteen-year-old, she does require the full-time use of a wheelchair for mobility. Mary Kate has been swimming with her high school team since her freshman year because her high school permits her to participate in local meets.

19. Because Mary Kate's disability prevents her from achieving times that are competitive against swimmers without disabilities, she does not earn points for her school, as IHSA has not adopted any rules regarding participation of students with disabilities at local meets.

20. Because IHSA has not adopted qualifying standards for state championship meets for students with disabilities, Mary Kate is unable to qualify for the state championship and participate alongside her teammates, despite the fact that Mary Kate's swimming times place her among the top adaptive high school swimmers in the state.

21. Like her teammates without disabilities, and like student athletes throughout Illinois, Mary Kate's dream is to compete at the highest level against the best swimmers and to represent her school.

22. Mary Kate has safely and fully participated in swimming and track and field programs operated by disability sports providers and organizers.

23. In all respects, Mary Kate is eligible and qualified to fully and safely participate in the track and field and swimming events conducted or overseen by IHSA, and other sports programs, with or without reasonable modifications and/or accommodations.

24. Mary Kate plans and intends to participate in swimming and track and field meets as permitted.

25. Unlike IHSA, the administration, athletic department, and coaches at Fenwick High School have always supported IHSA's stated motto of "equitable participation" and "respect, appreciation and acceptance of diversity."

26. A.G., a sophomore, was born with arthrogryposis, a static condition that restricts movement of appendages. A.G. participates in a number of sports and has excelled at swimming since she took up the sport less than two years ago. Despite being in contention for a spot on the U.S. Paralympic Team set to compete in London this year, she is unable to participate in her own state's championship meet. The Paralympic Games are a major international multi-sport competition for athletes with disabilities that are held in conjunction with the Olympic Games.

27. A.H., a sixth grade student, was born with a diffuse brain injury and later diagnosed with cerebral palsy. A.H. currently competes in swimming, track, and triathlon with adaptive sports programs. A.H. has an older brother who does not have a disability. His older brother will participate in district and possibly state meets in cross country and track starting next year, and A.H. greatly desires the opportunity to follow in his brother's footsteps by competing in district and state meets when he reaches high school.

28. N.N., a junior, was born with spastic diaplegic cerebral palsy. N.N. plays sled hockey and swims, competes with her high school swim team, and participates in sled hockey events put on by a national paralympic organization. Despite her competitive scores for an adaptive athlete, she has never tried out for the varsity team because she knows that her swimming times are not low enough to meet the varsity requirements for able-bodied swimmers. If IHSA fulfills its legal obligation and sets qualifying standards and creates opportunities for athletes with disabilities to

6

compete in state championships and other meets, schools like N.N.'s will have guidance on how to integrate athletes with disabilities.

29. S.S., a junior, has a visual impairment that will eventually lead to her becoming completely blind. S.S. competes for her high school in various track events but cannot participate in the state championship. S.S. also participates in a number of field events with adaptive sports programs, but her high school refuses to let her participate despite repeated requests. If IHSA sets rules that would allow athletes with disabilities to compete at regional, sectional, and state championships in field events, S.S.'s high school will be required to follow suit.

30. There are many other students around the state who would like to participate in sports programs run through IHSA, but are being denied the right to do so because they have one or more disabilities.

31. IHSA's stated purpose is "to provide leadership for the development, supervision and promotion of interscholastic competition and other activities in which its member schools engage." IHSA Constitution §1.120, attached as Exhibit A.

32. IHSA supervises and regulates all of the interscholastic activities in which its member schools engage, including, without limitation, promulgating rules and regulations, establishing and enforcing student eligibility standards, and operating competitive meets at the sectional and state level. Exhibit A at §1.130(a).

33. IHSA is a recipient of federal financial assistance under the Rehabilitation Act.

34. IHSA is a public entity under Title II of the ADA, 42 U.S.C. §12132, *et seq*.

35. IHSA is a place of public accommodation and/or operates places of public accommodation under Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

36. According to the IHSA website, 98 % of Illinois high schools are members of IHSA. There are currently 793 public and private high schools that are members of IHSA, out of a total of 811 high schools in Illinois. Found at: http://ihsa.org/Schools/EnrollmentsClassifications/AlphabeticalEnrollments.aspx (last visited April 16, 2012) and http://www.isbe.net/research/pdfs/quickstats_2011.pdf (last visited April 16, 2012).

37. All of the public high schools that are members of IHSA must, according to IHSA's Constitution, be supported by public taxation, and all member high schools must be recognized by the Illinois State Board of Education. Exhibit A at §1.200.

38. All IHSA-run state championship competitions are held at high school, college, or minor league stadiums or other venues that are open to the public. Tickets are sold for these events and are available to the general public.

39. IHSA's mission statement provides: "The IHSA governs the equitable participation in interscholastic athletics and activities that enrich the educational experience." Found at: http://ihsa.org/AbouttheIHSA/MissionStatementBeliefs.aspx, (last visited April 16, 2012).

40. IHSA's position statement requires that:

> Equality and Fairness in the IHSA programs shall be safeguarded at all costs. Equity is more than being in compliance with the laws, by-laws, and policies. It is a personal ethic. It is a spirit. It is a commitment to do what is right and fair for all programs, participants, schools, coaches, officials and administrators. It means creating an atmosphere and an environment where opportunities and resources are distributed fairly to all.

Found at: http://www.ihsa.org/Resources/EquityCenter.aspx, (last visited April 16, 2012).

41. IHSA is governed by a Board of Directors ("Board") that has "complete authority, subject to the Constitution and By-Laws, to organize and conduct such statewide interscholastic

activities as may or may not lead to state championships and to establish Terms and Conditions for these activities." Exhibit A at §1.450.

42. Under IHSA's Constitution, Illinois High Schools are required to "adhere explicitly" to terms and conditions set by IHSA for "IHSA-sponsored meets and tournaments."

43. There are no other statewide sports associations in the State of Illinois and no other organizations that run state high school championships, either public or private. The only opportunity for students to compete in a state championship competition as part of their high school teams is through IHSA-sanctioned state championships.

44. IHSA controls all aspects of interscholastic athletic events, including, for example, establishing the eligibility criteria for student athletes, dictating which member schools can compete in competitions, setting the hours and days during which interscholastic activities can be held, and regulating the qualifications of coaches and officials.

45. IHSA establishes all the scoring rules and qualifying standards for student athletes. IHSA has not promulgated rules enabling athletes with disabilities to score points in interscholastic meets. IHSA's regulations prohibit member schools from setting their own standards or scoring system for athletes with disabilities.

46. Students who have disabilities that prevent them from meeting existing state qualifying standards are denied the opportunity to compete in IHSA-run state championship meets, as qualifying standards were formulated for students without disabilities.

47. Without IHSA-qualifying standards for athletes with disabilities, these athletes are unable to set records and qualify to compete at the state championships, vital components of high school sports.

48. IHSA already provides different qualifying standards for state championship meets based on gender, school size, and geography, resulting in multiple qualifying standards for state championship meets in every event within a sport.

49. For example, IHSA maintains a policy regarding the grouping and seeding of state championships based on geography. Policy #19, attached as Exhibit B. Through the use of geographic-based sectionals, IHSA seeks to advance the "geographic principle" that "the State Series is designed to determine a State Champion. The State Series is not intended to necessarily advance the best teams in the state to the State Final." Exhibit B. Because of this principle and policy, the state championship is made up of teams from around the state that won at the qualifying sectional, not the teams with the best records or which compete in the toughest divisions.

50. Additionally, this geographic principle results in competitors in individual sports, like track and field and swimming, advancing to the state championship even when they do not meet the qualifying times.

51. IHSA also provides different qualifying standards for state championship meets in some sports depending on the number of students enrolled at a high school. For example, for track and field, high schools are placed into one of three divisions, depending on school size. Smaller high schools have lower qualifying standards than larger schools.

52. IHSA provides different qualifying standards based on gender, as male and female student athletes have different qualifying standards for state championship meets in every sport and event.

53. IHSA does not provide different qualifying standards for state championship meets for athletes with disabilities and has explicitly refused to adopt such standards.

54. Including qualifying standards for students with disabilities for state championship meets is a reasonable modification because: qualifying standards for athletes with disabilities are in existence for disability sports programs, including the Paralympics, and can easily be adapted for high school sports by IHSA; IHSA already has different qualifying standards in events based on gender; and IHSA already has different qualifying standards in some sports based on school size and location.

55. By using different qualifying standards for state championship meets based on gender, school size, and geographic location, IHSA allows for participants at the state championships who are not "the best" in the state.

56. Despite maintaining different qualifying standards for gender, school size, and school location, IHSA maintains that it cannot create such a policy for athletes with disabilities.

57. There are numerous athletes around the state who have been harmed by IHSA's failure to provide opportunities for students with disabilities. All of these students meet the definition of disabled under the ADA and the Rehabilitation Act, as they are substantially limited in a major life activity.

58. IHSA refuses to allow these and other students with disabilities to participate at interscholastic high school state, sectional, and qualifying meets, and IHSA refuses to formulate qualifying standards for students with disabilities for state championship meets, solely because these athletes have disabilities.

59. If IHSA set rules and qualifying standards for athletes with disabilities, member schools would be required to let athletes with disabilities participate.

60. Great Lakes Adaptive Sports Association ("GLASA") raised the issue of including athletes with disabilities in the state championship with IHSA approximately five years ago.

61. On or about October 21, 2011, Mary Kate, representatives from GLASA, and coaches from Fenwick High School met with representatives from IHSA to discuss including athletes with disabilities at the state track and swimming championships.

62. In November 2011, Fenwick High School, along with Keri Schindler of GLASA, submitted a written proposal to IHSA requesting that IHSA reasonably modify its policies to include qualifying times for students with disabilities and include one exhibition heat for swimmers with disabilities at the state swimming championship.

63. IHSA did not respond to these requests.

64. In January 2012, the OAG received a complaint from Equip for Equality on behalf of Mary Kate. In response to that complaint, the OAG sent a letter to IHSA on February 27, 2012 requesting a meeting.

65. On March 19, 2012, the OAG met with IHSA in an effort to collaboratively resolve this matter.

66. The OAG proposed that IHSA set up three exhibition heats in the upcoming 2012 Track and Field State Championship for wheelchair racers and allow these athletes to compete in the shot put and discus. The OAG presented this as a first step while IHSA, the OAG, and members of the adaptive sports community met and discussed long-term plans and goals for including athletes with disabilities in interscholastic sports.

67. During this meeting, IHSA's Executive Director, Martin Hickman, repeatedly stated that IHSA was concerned about liability if it agreed to open up one sport, track and field, but not others. The OAG advised IHSA that IHSA's efforts towards a goal of inclusion would be the most effective method of coming into compliance with the law.

68. Hickman agreed to present the OAG's proposal to IHSA's Board at its April 17, 2012 meeting. The OAG expressed concern about the delay, but Hickman stated that he required Board authority to agree to such a proposal and that there would still be sufficient time to incorporate these heats in the track and field championship. Hickman said that he thought the proposal was "reasonable." The OAG agreed to this timeframe based on Hickman's representations.

69. Instead of responding to the OAG proposal as promised, IHSA filed a lawsuit against the Attorney General.

70. As of the date of the filing of this Complaint, IHSA has not changed its policies to remedy the discrimination alleged in the Complaint.

## COUNT I: IHSA'S VIOLATION OF THE REHABILITATION ACT

71. The OAG and Mary Kate reincorporate and reallege the allegations in paragraphs 1 through 70 as if fully set forth in this paragraph 71. Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability…, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance… 29 U.S.C. § 794(a).

72. IHSA's programs constitute a program or activity within the meaning of the Rehabilitation Act.

73. IHSA receives state and federal financial assistance indirectly through its participating schools.

74. As a result of IHSA's actions and inactions described above, athletes with disabilities have been excluded from, not integrated into, and denied the benefits of, participation in interscholastic high school state championships, an activity directed, controlled, and overseen by IHSA, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

13

75. IHSA, by virtue of the conduct described herein, has discriminated against athletes with disabilities because of their disabilities in violation of Section 504 of the Rehabilitation Act of 1973.

76. IHSA is likely to continue to deny or limit participation by athletes with disabilities in other IHSA events and programs.

**WHEREFORE**, the OAG and Mary Kate request that this Court enter judgment in their favor and against IHSA as follows:

a) An order requiring IHSA to allow athletes with disabilities to participate and compete in IHSA sponsored and/or sanctioned events in all interscholastic high school meets, including state, sectional, and other meets for all sports;

b) An order requiring IHSA to implement qualifying standards for state championship meets for students with disabilities for all sports;

c) An order requiring IHSA to implement qualifying standards for the 2012 swimming season and the 2013 track season;

d) An order requiring IHSA to formulate rules and regulations for students with disabilities who participate in interscholastic sports enabling them to score points for the high school team in all sports;

e) An order requiring IHSA to formulate rules and regulations for students with disabilities who participate in interscholastic sports enabling them to score points for the high school team for the 2012 swimming season and the 2013 track season;

f) An order requiring IHSA to formulate rules, policies, and regulations for providing reasonable accommodations and modifications to students with disabilities for all sports, including appeal rights;

g) An order requiring IHSA to provide reasonable accommodations and modifications to students with disabilities upon request;

h) An order requiring IHSA to undergo training on: operating and officiating sports meets for athletes with disabilities, Rehabilitation Act requirements, and disability awareness;

i) Attorneys' fees and costs, including litigation expenses; and

j) Such other relief as the Court deems just and proper.

### COUNT II: IHSA'S VIOLATION OF TITLE II OF THE ADA

77. The OAG and Mary Kate reincorporate and reallege the allegations in paragraphs 1 through 70 as if fully set forth in this paragraph 77.

78. Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

79. Because IHSA's membership is comprised mostly of public high schools, and because it receives state and federal funding indirectly through participating schools, IHSA is a public entity as that term is defined in 42 U.S.C. § 12132.

80. There are athletes with disabilities across the state who are qualified individuals with disabilities as defined by the ADA.

81. These athletes with disabilities have been excluded from, and denied the benefits of, participation in interscholastic high school sports, an activity directed, controlled, and overseen by IHSA, in violation of Title II of the ADA, 42 U.S.C. § 12132, *et seq.*

82. IHSA, by virtue of the conduct described herein, has discriminated against these athletes with disabilities because of their disabilities in violation of Title II of the ADA, 42 U.S.C. § 12132, *et seq.*

83. IHSA is likely to continue to deny or limit the participation of athletes with disabilities in other IHSA events and programs.

**WHEREFORE**, the OAG and Mary Kate request that this Court enter judgment in their favor and against IHSA as follows:

a) An order requiring IHSA to allow athletes with disabilities to participate and compete in IHSA sponsored and/or sanctioned events in all interscholastic high school meets, including state, sectional, and other meets for all sports;

b) An order requiring IHSA to implement qualifying standards for state championship meets for students with disabilities for all sports;

c) An order requiring IHSA to implement qualifying standards for the 2012 swimming season and the 2013 track season;

d) An order requiring IHSA to formulate rules and regulations for students with disabilities who participate in interscholastic sports enabling them to score points for the high school team in all sports;

e) An order requiring IHSA to formulate rules and regulations for students with disabilities who participate in interscholastic sports enabling them to

      score points for the high school team for the 2012 swimming season and the 2013 track season;

  f) An order requiring IHSA to formulate rules, policies, and regulations for providing reasonable accommodations and modifications to students with disabilities for all sports, including appeal rights;

  g) An order requiring IHSA to provide reasonable accommodations and modifications to students with disabilities upon request;

  h) An order requiring IHSA to undergo training on: operating and officiating sports meets for athletes with disabilities, ADA requirements, and disability awareness;

  i) Attorneys' fees and costs, including litigation expenses; and

  j) Such other relief as the Court deems just and proper.

## COUNT III: IHSA'S VIOLATION OF TITLE III OF THE ADA

84. The OAG and Mary Kate reincorporate and reallege the allegations in paragraphs 1 through 70 as if fully set forth in this paragraph 84.

85. Title III of the ADA, 42 U.S.C. § 12182(a), *et seq.*, pertains to public accommodations and services operated by private entities, and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

86. IHSA is a "place of public accommodation" under Title III of the ADA as it owns, leases, and/or operates places of public accommodations; provides benefits and services for the

public and for places of public accommodation; and provides and enforces rules, regulations, standards that are in force at meets conducted by places of public accommodation.

87. IHSA, by virtue of the conduct described herein, unlawfully discriminated against athletes with disabilities because of their disabilities, in violation of Title III of the ADA.

88. IHSA is likely to continue to deny or limit the participation of athletes with disabilities in other IHSA events and programs.

**WHEREFORE**, the OAG and Mary Kate request that this Court enter judgment in their favor and against IHSA as follows:

   a) An order requiring IHSA to allow athletes with disabilities to participate and compete in IHSA sponsored and/or sanctioned events in all interscholastic high school meets, including state, sectional, and other meets for all sports;

   b) An order requiring IHSA to implement qualifying standards for state championship meets for students with disabilities for all sports;

   c) An order requiring IHSA to implement qualifying standards for the 2012 swimming season and the 2013 track season;

   d) An order requiring IHSA to formulate rules and regulations for students with disabilities who participate in interscholastic sports enabling them to score points for the high school team in all sports;

   e) An order requiring IHSA to formulate rules and regulations for students with disabilities who participate in interscholastic sports enabling them to score points for the high school team for the 2012 swimming season and the 2013 track season;

    f) An order requiring IHSA to formulate rules, policies, and regulations for providing reasonable accommodations and modifications to students with disabilities for all sports, including appeal rights;

    g) An order requiring IHSA to provide reasonable accommodations and modifications to students with disabilities upon request;

    h) An order requiring IHSA to undergo training on: operating and officiating sports meets for athletes with disabilities, ADA requirements, and disability awareness;

    i) Attorneys' fees and costs, including litigation expenses; and

    j) Such other relief as the Court deems just and proper.


                                      Respectfully submitted,

                                      LISA MADIGAN
                                      Attorney General of the State of Illinois

                              By: /s/ Nicki Bazer_____
                                      Nicki Bazer
                                      Bureau Chief


Nicki Bazer
Judith Levitan
Office of the Illinois Attorney General
100 W. Randolph St., Floor 11
Chicago, IL 60601
(312) 814-3399
nbazer@atg.state.il.us

                                      Mary Kate Callahan,

                              By: /s/ Alan M. Goldstein_____

                     Alan M. Goldstein
                     Attorney for Plaintiff, Mary Kate Callahan

Alan M. Goldstein
Amy F. Peterson
Lauren M. Lowe
Equip for Equality
20 N. Michigan Ave., Suite 300
Chicago, IL 60602
(312) 341-0022
Alan@equipforequality.org