**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* LISA MADIGAN, Attorney General,

and

MARY KATE CALLAHAN, By her Parent and Next Friend, JOANNE CALLAHAN,

Plaintiffs,

v.

ILLINOIS HIGH SCHOOL ASSOCIATION, an unincorporated association,

Defendant.

Case Number:12-cv-3758

Judge: Joan B. Gottschall

Magistrate Judge: Jeffrey T. Gilbert

**MEMORANDUM IN SUPPORT OF PLAINTIFF MARY KATE CALLAHAN'S MOTION FOR A PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff Mary Kate Callahan is a seventeen-year-old student at Fenwick High School ("Fenwick"), where she is a rising senior. She expects to graduate in May of 2013. Mary Kate has a disability, lower-limb paralysis, which requires her to use a wheelchair. She is an accomplished athlete. She was named a 2011 United States All-American Paralympic athlete for field events and has represented the United States in World Championship meets and other international sporting competitions for people with disabilities in swimming, track and field, and the Paratriathlon.[1] (Ex. A, Callahan Aff., ¶ 4). Mary Kate has practiced with the Fenwick swim

[1] The Paratriathlon consists of swimming, biking, and track events for athletes with physical and visual impairments. Found at: *Do You Have What It Takes?*, INTERNATIONAL TRIATHLON UNION, http://www.triathlon.org/ images/ uploads/Paratriathlon_Brochure_2012.pdf (last visited July 11, 2012).

team and has swam with the team in local meets. What Mary Kate has not accomplished is full and equal participation with her fellow teammates at Fenwick. For the past three years, despite her athletic talent and commitment, she has been denied the opportunity to qualify for state meets or earn points for her team in competitions against other schools.

Mary Kate has been deprived of these opportunities by Defendant Illinois High School Association ("IHSA"), the entity that regulates and supervises interscholastic athletics for Illinois high schools. Mary Kate's opportunity for full integration into her high school teams will be forever lost without immediate judicial intervention. Despite IHSA's lip service to a pilot project ostensibly aimed at such integration, IHSA has, as of the date of this filing, failed to provide a commitment to the project or any details regarding whether the project will be in place for next swimming season, the events involved, or how the pilot project will operate. Mary Kate is therefore left with no choice but to move for a preliminary injunction, respectfully requesting this Court to enjoin Defendant from its ongoing discrimination against her on the basis of her disability, and to grant relief that will ensure that she graduates high school with at least one year of equal and full participation with her teammates. Without immediate relief, Mary Kate will suffer the irreparable injury of graduating from high school an accomplished, dedicated athlete and yet, paradoxically and unlawfully, a noncompetitive team member.

In her lawsuit, brought with Illinois Attorney General Lisa Madigan ("OAG"), Mary Kate seeks injunctive and other relief to obtain redress for Defendant's violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and Title II or III of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. §§ 12132, 12182 ("ADA"). IHSA's ongoing discrimination will create irreparable injury to Mary Kate, causing her to graduate high school

without ever having the opportunity to fully participate in high school athletics. She is likely to succeed on the merit of her claims under these statutes.

The burdens, if any, and costs to IHSA from modifying rules and implementing qualifying standards for student athletes with disabilities, will not amount to irreparable harm to IHSA. To the contrary, such relief will only further IHSA's stated mission, listed on its website, to govern the "equitable participation in interscholastic athletics." Found at: *Mission Statement & Beliefs*, ILLINOIS HIGH SCHOOL ASSOCIATION, http://ihsa.org/AbouttheIHSA/MissionStatementBeliefs.aspx (last visited July 11, 2012); (Compl. ¶¶ 39). The relief also coincides with IHSA's position statement: "Equality and Fairness in the IHSA programs shall be safeguarded at all costs . . . creating an atmosphere and an environment where opportunities and resources are distributed fairly to all." Found at: *Equality Center*, ILLINOIS HIGH SCHOOL ASSOCIATION, http://www.ihsa.org/Resources/EquityCenter.aspx (last visited July 11, 2012); (Compl. ¶¶ 40). Any harm that IHSA could claim from implementing changes to make Mary Kate a competitive team member is vastly outweighed by the irreparable injury to Mary Kate of the lost, final opportunity (after three years of asking and waiting) to compete fully with her teammates. Finally, the public interest is served by fuller integration of student athletes with disabilities.

## II. STATEMENT OF FACTS

Mary Kate is a seventeen-year-old student at Fenwick High School, where she anticipates graduating in May of 2013. (Ex. A, Callahan Aff., ¶¶ 2, 3). She has lower-limb paralysis due to acquiring transverse myelitis when she was less than one year old, and uses a wheelchair for mobility. (*Id.* ¶ 2). Mary Kate is a talented and committed athlete, participating in swimming, track and field, and basketball. (*Id.* ¶ 4). Mary Kate was selected to represent the U.S. at the Paratriathlon World Championships in New Zealand in 2012, was named to the U.S.

Paralympics All-American team for field events in 2011, and was a member of the Junior World Team for swimming that went to the Czech Republic in 2010. (*Id.*). However, due to IHSA's refusal to provide requested reasonable modifications and accommodations,[2] Mary Kate is being denied a full and equal opportunity to participate in swimming.

Mary Kate has been swimming with Fenwick's swimming team since her freshman year. (Ex. A, Callahan Aff., ¶ 5). Fenwick permits her to practice with the team and participate in local swim meets. (*Id*., ¶ 8). Mary Kate cannot, however, participate in sectional meets or qualify for state championship meets because IHSA has only implemented qualifying standards for state championship meets for swimmers without disabilities. (*Id*., ¶ 7, 8). Mary Kate's disability prevents her from achieving these standards, resulting in her being excluded from sectional and state championship meets. (*Id.* ¶ 8).

Mary Kate wants to fully participate with her high school swimming team. She wants to earn points for her team in all competitions, just like her teammates. (Ex. A, Callahan Aff., ¶¶ 9, 10). Mary Kate also seeks the opportunity to qualify for the state championship swim meet, which she can do only if IHSA adopts qualifying standards for students with disabilities. (*Id*. ¶¶ 8, 10). Mary Kate is eligible and qualified to fully and safely participate in the swimming events conducted or overseen by IHSA. The reasonable modifications Mary Kate seeks are in place in fourteen to twenty-four states and have been in place in some states for over twenty years. (Ex. B, Galli Aff., ¶ 4).

Defendant IHSA supervises and regulates interscholastic activities for Illinois high schools; 98% of Illinois high schools are members of IHSA. (Compl. ¶¶ 31, 32, 36-45). IHSA organizes, provides rules, enforces qualification standards, oversees, and operates meets for

[2] Plaintiff will use the terms "accommodation" and "modification" interchangeably as the Rehabilitation Act generally refers to "reasonable accommodation" and Titles II and III of the ADA refer to "reasonable modification."

interscholastic high school sports programs in Illinois and operates sectional, qualifying, and state meets for high school sports. (*Id.* ¶ 32). IHSA currently provides different qualifying standards based on gender, school size, and school location. (*Id.* ¶¶ 48–52). IHSA does not, however, provide different qualifying standards for athletes with disabilities. (*Id.* ¶¶ 46–47, 53–56). IHSA's failure to provide standards for athletes with disabilities has prevented Mary Kate and other students with disabilities from fully and equally participating in interscholastic sports in Illinois. (*Id.* ¶ 30).

Instead of responding to a proposal made by OAG to remediate IHSA' s current discriminatory system, IHSA filed a limited declaratory judgment action in McLean County Circuit Court on April 17, 2012, asking the court to declare that IHSA was not required to create separate events for athletes with disabilities in the 2012 Girls' State Track and Field Championships. That lawsuit was subsequently removed to the U.S. District Court for the Central District and then transferred and consolidated into the instant case.

Mary Kate seeks an injunction ordering IHSA to implement qualifying standards for students with disabilities for the state championship swimming meet that will allow her the opportunity to participate in select events if she meets these qualifying standards. The qualifying standards will allow the top eight competitors with a disability per event. The competition for students with disabilities should be integrated into, and be part of, the state championship meets. In addition, Mary Kate seeks an injunction ordering IHSA to implement a point system for fairly counting team points based on the participation of students with disabilities in swimming by adopting the system already in place in the State of Washington. (Mot. for Prelim. Inj., ¶¶ 8-9). Mary Kate also seeks an injunction requiring that Defendant undergo appropriate training. She

seeks this relief for the August 8 – November 17, 2012 swim season, her last at Fenwick. (Ex. A, Callahan Aff., ¶ 3).

## III. ARGUMENT

### A. Standards for a Preliminary Injunction

In *Abbott Laboratories v. Mead Johnson & Co*., 971 F.2d 6, 11 (7th Cir. 1992), the Seventh Circuit held that, as a "threshold matter," a party seeking emergency relief must demonstrate "(1) some likelihood of succeeding on the merits, and (2) that it has "'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." In the context of a preliminary injunction, "a 'likelihood of success' exists if the party seeking injunctive relief shows a 'better than negligible' chance of succeeding on the merits." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999).

If the moving party meets those prerequisites, the court is to consider (3) the irreparable harm to the nonmoving party if the relief is granted, balancing it against the irreparable harm to the moving party if the relief is denied, and (4) the public interest, "meaning the consequences of granting or denying the injunction to non-parties." *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002).

In weighing these four factors, a "sliding scale" may be used, such that "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Labs*., 971 F.2d at 12. In addition, the requirement of a likelihood of success on the merits is lessened if there are "serious questions going to the merits of the claim as to make it a fair ground for litigation and a balance of the hardships tipping decidedly toward the movant." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 826 n.5 (7th Cir.

1998) (internal citations omitted). Applying the analysis used by the Seventh Circuit, Mary Kate is entitled to a preliminary injunction.

### B. Plaintiff is Likely to Prevail on the Merits of her Claims that Defendant's Actions are in Violation of the ADA and the Rehabilitation Act.

#### 1. Legal Standard

The elements of a discrimination claim under the Rehabilitation Act or ADA "are nearly identical." *Ind. High Sch. Athletic Ass'n*, 181 F.3d at 845-46 n.6. A plaintiff must show that: (1) she has a disability, (2) she is "otherwise qualified" to participate, (3) she was discriminated against by reason of disability, and (4) the defendant is a covered entity. *See Grzan v. Charter Hosp.*, 104 F.3d 116, 119 (7th Cir. 1997). A covered entity under the Rehabilitation Act includes a "program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). "Program or activity" also means "all the operations of" an entity "established by two or more" entities that receive federal financial assistance, such as schools. 29 U.S.C. § 794(b); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 491 (D.N.J. 1998). Public entities are covered under Title II of the ADA. 42 U.S.C. § 12131. Places of public accommodation are covered under Title III of the ADA. *Id.* § 12181. Mary Kate shows a strong likelihood of success on each element of her claim and her case presents "serious questions" that make the issues a "fair ground for litigation." *Boucher*, 134 F.3d. 821, 826 n.5 (7th Cir. 1998).

#### 2. Mary Kate Meets the Elements of her ADA and Rehabilitation Act Claims.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Mary Kate meets the ADA's definition of disability, the first element of her claim, because she has paralysis and uses a wheelchair for mobility. (Ex. A, Callahan Aff., ¶ 2). She is therefore substantially limited in the major life activity of walking, as well as in other major life activities and major bodily

functions that require movement of the legs. *See Norfleet v. Walker*, No. 11-21-37, 2012 WL 2520465, at *2 (7th Cir. July 2, 2012) ("To be wheelchair-bound is to be disabled within the [Rehabilitation] Act's meaning.")

Secondly, Mary Kate is "otherwise qualified" for IHSA's programs. A qualified individual under the ADA or Rehabilitation Act is "an individual with a disability, who with or without reasonable modifications to rules, . . . meets the essential eligibility requirements for . . . participation." 42 U.S.C. § 12131(2). Mary Kate has been swimming with Fenwick's team in practices and competitions for three years and also competes in other sports programs for individuals with disabilities. (Ex. A, Callahan Aff., ¶¶ 4, 5). Because she meets all eligibility requirements for high school sports, she is a qualified individual under the Rehabilitation Act and ADA.

Finally, Mary Kate was discriminated against by reason of her disability. She cannot meet the qualifying standards for state championship meets or score points for her team because IHSA refuses to adopt qualifying standards and rules providing for the participation of athletes with disabilities. (Ex. A, Callahan Aff., ¶ 9). On numerous occasions, Mary Kate, the OAG, Fenwick, and the Great Lakes Adaptive Sports Association ("GLASA") requested that IHSA provide reasonable accommodations to provide full and equal opportunities for students with disabilities in high school sports. (Compl.. ¶¶ 61-69). IHSA did not respond to requests from any person or agency for reasonable accommodations, other than by filing a lawsuit and issuing press releases. (*Id.* ¶¶ 63, 69); *News & Media Announcements*, ILLINOIS HIGH SCHOLL ASSOCIATION, (June 11, 2012), http://ihsa.org/NewsMedia/Announcements/tabid/93/ID/147/IHSA-To-Expand-Current-Post-Season-Opportunities-For-Student-Athletes-With-Disabilities.aspx.

IHSA's refusal to make the requested reasonable accommodations constitutes discrimination on the basis of disability. The Seventh Circuit has held that "it is possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation" or "a reasonable modification." *Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d at 847-48. The denial of a requested reasonable modification request may establish that discrimination occurred "but for" the individual's disability. *Id*. at 849; *see also Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 754 (7th Cir. 2006). *Washington* involved a request for a reasonable modification of the Indiana High School Athletic Association's rule regarding the number of semesters a student is eligible to compete in high school sports. 181 F.3d at 842-43. The court held that proving intent to discriminate was not necessary as long as a plaintiff could demonstrate a "failure to make a reasonable accommodation." *Id*. at 848. *Washington*'s holding applies equally to Mary Kate's requested reasonable modifications.

The modifications Mary Kate seeks are reasonable. Qualifying standards for state championships for athletes with disabilities exist in approximately fourteen to twenty-four other states, as well as in the U.S. Paralympic program. (Ex. B, Galli Aff., ¶¶ 3, 4). These standards can easily be adapted for Illinois high school sports. (*Id*. ¶ 5). In addition, many states have systems for counting points based on the participation of students with disabilities, even when their disabilities prevent them from placing against students without disabilities. A point system for students with disabilities can easily be implemented in Illinois. (*Id*., ¶ 4).

**a. IHSA is a Public Entity under Title II of the ADA**

IHSA is a public entity and thus a covered entity under Title II of the ADA. (Compl. ¶¶ 34, 79). The ADA defines "public entity" to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §

12131(1)(B). Approximately 98% of Illinois private and public high schools are members of IHSA; all public high schools are supported by public taxation and recognized by the Illinois State Board of Education; and IHSA organizes, provides rules, enforces qualification standards, oversees, and operates meets for interscholastic high school sports programs in Illinois. (*Id.* ¶¶ 7, 32, 34, 36, 37). That IHSA is not an official part of the state government is irrelevant given that most of its members are public high schools. Although the IHSA is a voluntary association, the overwhelmingly public character of IHSA's membership and the amount of control exercised by IHSA over public high schools demonstrate that IHSA is an instrumentality of state government under 42 U.S.C. § 12131(1)(B).

Seventh Circuit case law supports the conclusion that IHSA is covered by Title II of the ADA. In *Washington*, 181 F.3d at 846-48, although the Indiana High School Athletic Association did not contest coverage under Title II, the Seventh Circuit held that a preliminary injunction should issue against the association under Title II. Similarly, a number of district courts that have addressed the issue have found that state high school athletic associations are covered under Title II of the ADA.[3] Further support is found in Seventh Circuit cases holding that IHSA is a state actor under § 1983 and the Fourteenth Amendment. *See Griffin High Sch. v. Ill. High Sch. Assoc.*, 822 F.2d 671, 674 (7th Cir. 1987); *Menora v. Ill. High Sch. Assoc.*, 683 F.2d 1030, 1032 (7th Cir. 1982). In *Griffin* and *Menora*, IHSA did not even dispute that it was a state actor. For these reasons, there is a strong likelihood that Mary Kate will succeed in showing that Defendant is a public entity under Title II of the ADA.

[3] *See, e.g.*, *Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 913 F. Supp. 663, 667 (D. Conn. 1996), *rev'd on other grounds*, 94 F.3d 96 (2d Cir. 1996); *Johnson v. Fla. High Sch. Athletic Ass'n*, 899 F. Supp. 579, 583-84 (M.D. Fla. 1995), *vac'd on other grounds*, 102 F.3d 1172 (11th Cir. 1997); *Rhodes v. OHSAA*, 939 F. Supp. 584, 590-91 (N.D. Ohio. 1996); *Sandison v. Mich. High Sch. Athletic Ass'n*, 863 F. Supp. 483, 486 (E.D. Mich. 1994), *rev'd in part on other grounds*, 64 F.3d 1026 (6th Cir. 1995).

**b. Alternatively, IHSA is Covered under Title III of the ADA.**

If IHSA is not covered by Title II of the ADA, then it must be covered by Title III. Title III applies to "public accommodations and services operated by private entities." 42 U.S.C. § 12181. The term "private entity" in Title III "is defined to capture everything which is not a 'public entity'" under Title II. *Bowers*, 9 F. Supp. 2d at 474 (holding that that the NCAA is covered under Title III). A place of public accommodation includes a gymnasium or "other place of exercise or recreation." 42 U.S.C. § 12181(7)(L). Congress intended to exempt an extremely small universe of entities from the ADA, namely "private clubs or establishments" and "religious organizations or entities." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 n. 51 (2001) (citing 42 U.S.C. § 12187). Like the PGA Tour, IHSA is a non-profit entity that hosts sporting events at places of exercise it does not itself own but rather "operates." *PGA Tour*, 532 U.S. at 676-77.

Also of note is a case from the Northern District of Illinois, *Ganden v. National Collegiate Athletic Ass'n,* No. 96 C 6953, 1996 WL 680000 (N.D. Ill. Nov. 21, 1996). In *Ganden*, the court held that, for purposes of a preliminary injunction, the plaintiff showed a "reasonable likelihood of demonstrating that the NCAA constituted a 'place of public accommodation' within the meaning of Title III." *Id*. at *10. The court relied on the following: the NCAA was a membership organization with a "connection to a number of public accommodations"; the NCAA governed interscholastic competitions by establishing uniform rules, including determining student-athlete eligibility; and the NCAA retained control over the use of the facilities to the extent that it could be deemed to "operate" the facilities. *Id*.

Like the NCAA, IHSA is a membership organization that governs and operates sports competitions by establishing uniform rules for competitions that occur at multiple public accommodations, including gyms, arenas, and other places of recreation, all of which are places

of public accommodation. 42 U.S.C. § 12181(7)(L). The NCAA operates sports competitions between colleges on a national level; the IHSA operates sports competitions between high schools on a statewide level. Therefore, IHSA meets the criteria for Title III coverage under the text of the statute and the holdings of *PGA Tour* and *Ganden*.

**c. IHSA is Covered under Section 504 of the Rehabilitation Act.**

The Rehabilitation Act provides an additional remedy for Plaintiff's claims of discrimination against IHSA. The Rehabilitation Act prohibits discrimination by entities that receive federal financial assistance. Mary Kate alleges that IHSA receives federal funding directly and indirectly through member schools, thus making IHSA a covered entity under the Rehabilitation Act. (Compl. ¶¶ 33, 73). IHSA admits that it receives funding from member schools through fines. (Def. Mot. To Dismiss, Ex. H ¶ 3). A "program or activity" under the Rehabilitation Act is defined as "all the operations of" a "local educational agency,… or other school system," 29 U.S.C. §794(b)(2)(B), or of an entity "established by two or more" entities that receive federal financial assistance. 29 U.S.C. §794(b)(4). In *Bowers*, the court found that the NCAA was subject to the Rehabilitation Act under this latter provision. *Bowers*, 9 F. Supp. 2d at 491. Similarly, IHSA is covered by the Rehabilitation Act because two or more schools combine to form IHSA and IHSA acts as an educational agency on behalf of the Illinois school system.

**C. <u>Plaintiff has No Adequate Remedy at Law and Will Suffer Immediate Irreparable Injury if a Preliminary Injunction is Denied.</u>**

A plaintiff has no adequate remedy at law when an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F. 2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm is met when the moving party will suffer harm during the pendency of the case "that cannot be prevented or

fully rectified by the final judgment after trial." *Id*. Mary Kate expects to graduate in May of 2013. She will suffer immediate irreparable injury if a preliminary injunction is not entered: she will forever lose the opportunity to fully and equally participate and compete as an athlete with her peers during high school. She will also lose the opportunity to earn points for her team or qualify for the state championship meet. No amount of damages can adequately compensate her for this loss.

In *Washington*, 181 F.3d 840, a high school student with a learning disability sought a preliminary injunction to enjoin a high school athletic association from denying the student athletic eligibility for a ninth semester of school. In granting the preliminary injunction, the Seventh Circuit held that the student's lost opportunity to compete in the remaining basketball season constituted irreparable harm. Similarly, in *Crane v. Indiana High School Athletic Ass'n*, 975 F. 2d 1315 (7th Cir. 1992), the Seventh Circuit held that injunctive relief was necessary when a student faced missing just a single event, the state golf tournament, because the student had no adequate legal remedy. *Id*. at 1326.

Like the plaintiffs in *Washington* and *Crane*, Mary Kate will suffer irreparable harm for which damages cannot compensate her if this Court does not issue a preliminary injunction. Like her colleagues without disabilities, she wants to help her swim team win local meets and she wants to qualify individually for the state championship meet. Mary Kate's disability and IHSA's refusal to implement reasonable rules modifications are preventing her from a final opportunity to achieve her high school athletic goals. The loss of the athletic season and, with that, the lost opportunity to fully and equally participate in athletics with her classmates, will cause mental and physical consequences that cannot be repaired.

**D. The Irreparable Harm Plaintiff Faces without Preliminary Injunctive Relief Outweighs any Harm to Defendant**

If Mary Kate is denied relief, she will complete her high school sports career without ever having the opportunity to qualify for the state championship swim meet or contribute to her team by scoring points. Money damages cannot replace this lost opportunity. The modifications that Mary Kate seeks in her Motion for a Preliminary Injunction are reasonable and are required to ensure her full and equal participation in high school interscholastic sports. (Ex. B, Galli Aff., ¶¶ 2-8). The requested reasonable modifications would not cause IHSA an undue burden nor fundamentally alter interscholastic competitions. Indeed, Mary Kate's requested preliminary relief would help IHSA fulfill its mission not only to Mary Kate, but to all Illinois high school athletes. IHSA's purpose will only be furthered by an injunction allowing for Mary Kate's participation, participation she has fervently desired and patiently waited for the last three years. The balance of the hardships weighs heavily in favor of Mary Kate. She has everything to lose during her final year of high school without immediate relief, and Defendant has nothing to lose if the requested relief is granted.

**E. The public interest favors the issuance of a preliminary injunction.**

The granting of interim relief requiring IHSA to allow Mary Kate to participate as a full and active participant in next term's swimming team would serve the public interest by furthering the ADA's purpose of ensuring, to the fullest extent possible, integration of persons with disabilities. The issuance of a preliminary injunction would serve the "public's interest in enforcement of the ADA and in elimination of discrimination on the basis of disability." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011). Moreover, issuance of a preliminary injunction would serve a public interest beyond the general interest in enforcement of anti-discrimination laws. Mary Kate's requested relief would make her, and

likely others, a visible competitive athlete with a disability, a visible repudiation of the misconception that having a disability renders an athlete unable to be a full team player. The public interest would certainly be served by allowing student athletes with disabilities to compete with their peers in competitions that, for many, are hallmarks of the high school experience and which create memories of achievement that cannot be measured or valued in dollars.

## IV. CONCLUSION

For the foregoing reasons, Mary Kate respectfully requests this Court enter a Preliminary Injunction as fully set out in the relief requested in Plaintiff's Motion for Preliminary Injunction.

Respectfully Submitted,

*/s/ Alan M. Goldstein*

Alan M. Goldstein
Lauren M. Lowe
Amy F. Peterson
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I, Alan M. Goldstein, an attorney, state under oath that I caused a copy of Plaintiff's Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction to be served upon:

Matthew S. Hefflefinger
Heyl, Royster, Voelker & Allen
124 S.W. Adams Street, Suite 600
Peoria, IL 61602

Polly Hayes
Assistant Attorney General
Chief, Disability Rights Bureau
Office of the Ilinois Attorney General
100 W. Randolph, 11th Floor
Chicago, IL 60601

by electronic means via the Court's ECF system on July 12, 2012.

*/s/ Alan M. Goldstein*

Alan M. Goldstein

Attorney for Plaintiff Mary Kate Callahan

Alan M. Goldstein
Lauren M. Lowe
Amy F. Peterson
Equip for Equality
20 North Michigan, Suite 300
Chicago, IL 60602
alan@equipforequality.org
lauren@equipforequality.org
amy@equipforequality.org