UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, )<br>ex rel. LISA MADIGAN, Attorney General, et al., )<br>)<br>    Plaintiffs, )<br>)<br>    v. )<br>)<br>ILLINOIS HIGH SCHOOL ASSOCIATION, )<br>An Unincorporated Association, )<br>)<br>    Defendant. ) | Case No. 1:12-cv-03758<br><br>Honorable Joan B. Gottschall |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517[1] to address arguments raised in the Illinois High School Association's ("IHSA") Motion to Dismiss. This litigation implicates the proper interpretation and application of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Department of Justice ("Department") regulation implementing title III of the ADA, 28 C.F.R. pt. 36. Accordingly, the United States has a strong interest in the resolution of this matter. In furtherance of that interest, the United States urges the Court to deny IHSA's Motion to Dismiss because the facts, as pleaded, are sufficient to state a claim that IHSA is subject to title III of the ADA.

**BACKGROUND**

Plaintiff Mary Kate Callahan is a sixteen-year-old high school student athlete who competes in swimming and track, and who has physical disabilities, including lower-limb paralysis related to transverse myelitis. Compl. ¶ 2. Ms. Callahan and the State of Illinois, also a

---

[1] Pursuant to 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

1

Plaintiff, allege that the IHSA has violated and continues to violate section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("section 504"), and titles II and III of the ADA, by denying Ms. Callahan, and other high school student athletes with disabilities — including a student athlete who is in contention to qualify for the 2012 U.S. Paralympic Team — a full and equal opportunity to qualify for and participate in various IHSA-sponsored and sanctioned events, competitions, and tournaments. *Id.* ¶¶ 1-7, 26-30.

The IHSA is an unincorporated association headquartered in Bloomington, Illinois. *Id.* ¶ 11. As the only statewide high school sports association in Illinois, the IHSA sets qualifying standards, eligibility rules, and scoring rules, and administers and operates all sectional, qualifying, and championship meets and tournaments throughout the State of Illinois. *Id.* ¶¶ 7, 29-32, 41. IHSA's membership includes 98% of Illinois public and private high schools, including nearly 800 high schools. *Id.* ¶¶ 7, 36. Illinois high schools are required to "adhere explicitly" to terms and conditions set by IHSA for "IHSA-sponsored meets and tournaments." *Id.* ¶ 42. All IHSA state championship competitions are organized and administered by IHSA and held at high school, college, or minor league stadiums, or other venues that are open to the public. Tickets are sold for these events and are available to the general public. *Id.* ¶ 38. IHSA is primarily funded by gate receipts obtained during the various state championship series that IHSA conducts throughout the year. IHSA Mot. Dismiss Ex. H, at ¶ 3. IHSA provides different qualifying standards for state championships based on gender, school size, and geography, which result in multiple qualifying standards for state championships in every event within a sport. Compl. ¶ 48.

Plaintiffs allege that IHSA discriminates against student athletes with disabilities by failing to make reasonable modifications necessary to afford student athletes with disabilities the

2

opportunity to score points and set records in interscholastic meets and tournaments, and that IHSA sets qualifying standards that deny student athletes with disabilities the opportunity to compete in IHSA-run state championships. *Id.* ¶¶ 44-47. On June 6, 2012, IHSA moved to dismiss this action claiming, among other things, that IHSA is not subject to the requirements of title III because it is not a public accommodation, a term defined in the statute and the Department's title III regulation. 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104.

Accepting as true the allegations in Plaintiffs' Complaint, IHSA squarely falls within the coverage of title III as a "public accommodation" because it "operates" one or more "place[s] of public accommodation." 42 U.S.C. § 12182; 28 C.F.R. §§ 36.104, 36.201(a).[2]

## LEGAL STANDARD

In reviewing the sufficiency of a complaint, all well-pleaded facts must be accepted as true and all permissible inferences must be drawn in favor of the plaintiff. *Agnew v. NCAA*, No. 11-3066, 2012 WL 2248509, at \*3 (7th Cir. June 18, 2012) (citing *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011)). "The Federal Rules of Civil Procedure require only that a complaint provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, "[t]he Supreme Court has described this notice-pleading standard as requiring a complaint 'to contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

---

[2] This Statement of Interest does not address Plaintiffs' claims that IHSA is subject to section 504 or that it is an instrumentality of the State of Illinois and therefore subject to title II of the ADA. We note, however, that some federal courts have applied title II to athletic associations. *See, e.g.*, *Bingham v. Or. Sch. Activities Ass'n*, 37 F. Supp. 2d 1189, 1193-94 (D. Or. 1999), *vacated as moot sub nom. Bingham v. Ediger*, 20 F. App'x 720 (9th Cir. 2001); *Rhodes v. Ohio High Sch. Athletic Ass'n*, 939 F. Supp. 584, 591 (N.D. Ohio 1996); *Hoot v. Milan Area Schs.*, 853 F. Supp. 243, 251 (E.D. Mich. 1994).

## STATUTORY AND REGULATORY BACKGROUND

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress found that "discrimination against individuals with disabilities persists in such critical areas as . . . public accommodations, education, . . . recreation, . . . and access to public services," and that "individuals with disabilities continually encounter various forms of discrimination, including . . . the discriminatory effects of . . . overprotective rules and policies, failure to make modifications to existing . . . practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits . . . or other opportunities." 42 U.S.C. § 12101(a)(3), (5). Congress observed that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity [and] full participation . . . for such individuals." 42 U.S.C. § 12101(a)(7).

The ADA prohibits disability-based discrimination in employment, the services and programs of public entities, transportation systems, telecommunications, commercial facilities, testing and examinations, and public accommodations. This case involves title III of the ADA, which applies to, among others, private entities that own, operate, lease (or lease to) places of public accommodation. Such entities may not discriminate against any individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the place of public accommodation. 42 U.S.C. § 12182.

Congress explicitly delegated authority to the Department of Justice to promulgate regulations under title III. 42 U.S.C. § 12186(b). The Department's regulations and interpretation thereof are entitled to substantial deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) ("As

the agency directed by Congress to issue implementing regulations, . . . to render technical assistance explaining the responsibilities of covered individuals and institutions, . . . and to enforce Title III in court, . . . the Department [of Justice]'s views are entitled to deference."); *Olmstead v. L.C.*, 527 U.S. 581, 597 (1999) (regarding the title II regulation: "[T]he well-reasoned views of the agencies implementing a statute constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). *See also Auer v. Robbins*, 519 U.S. 452, 461 (1977) (concluding that an agency's interpretation of its regulations is "controlling unless plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted).

## ANALYSIS

Title III of the ADA prohibits disability-based discrimination by private entities that own, operate, lease (or lease to) places of public accommodation. 42 U.S.C. § 12182(a). As an association that administers and operates interscholastic meets and tournaments, and regulates eligibility for such events, IHSA is subject to title III's nondiscrimination mandate. IHSA's arguments to the contrary reflect a fundamental misunderstanding of the statute and title III's implementing regulation as applied to the facts pleaded in this case.

***IHSA is a public accommodation that operates places of public accommodation.***

Title III's general rule provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Title III defines a "place of public accommodation" as "a facility operated by a private entity whose operations affect commerce and fall within at least one" of 12 categories, including gymnasiums and other places of exercise or recreation, places of

5

entertainment, and places of education. 28 C.F.R. § 36.104 (definitions); 42 U.S.C. § 12181(7). A "public accommodation" under the statute is "a private entity that owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.104; 42 U.S.C. § 12181(7). The Department's 1991 regulatory guidance confirms that it is the private entity — the "public accommodation" — that is subject to title III's requirements: "The term 'public accommodation[ ]' . . . is reserved by the final rule for the private entity that owns, leases (or leases to), or operates a place of public accommodation. It is the public accommodation, and not the place of public accommodation, that is subject to the regulation's nondiscrimination requirements." 28 C.F.R. pt. 36, App. C (concerning the definitions at 28 C.F.R. § 36.104).

Application of this standard to Plaintiffs' claims demonstrates that IHSA is subject to title III. IHSA asserts that it is not a "public entity." Mem. Supp. Mot. Dismiss at 11-2. If that assertion is correct, *see supra* note 2, then it necessarily follows that IHSA qualifies as a "private entity" for purposes of title III. *See* 42 U.S.C. § 12181 (6) (defining "private entity" for purposes of title III as "any entity other than a public entity (as defined in section 12131(1))"). In addition, IHSA does not dispute that its activities affect commerce. Finally, IHSA operates "places of public accommodation" — specifically, the facilities in which the association's meets and tournaments are held, including the gymnasiums, arenas, courts, pools, tracks, stadiums, and other venues open to the public. Compl. ¶ 38. Title III explicitly identifies such facilities as places of public accommodation when owned, leased, *or operated* by a private entity whose operations affect commerce. *See* 42 U.S.C. § 12181(7)(C), (D), (J), and (L) (listing, as places of public accommodation: elementary, secondary, undergraduate, or other places of education; gymnasiums, or other places of exercise or recreation; stadiums or other places of exhibition entertainment; and/or other places of public gathering).

IHSA asserts that because it is "not a physical structure" and is "merely an organization that sanctions and promotes athletic events," it is not required to comply with title III. Def.'s Mem. Supp. Mot. Dismiss at 13; Rep. at 7. IHSA cites *Brown v. 1995 Tenet Paraamerica Bicycle Challenge*, 959 F. Supp. 496 (N.D. Ill. 1997) for this proposition. *Brown* is materially different from the case at bar. *Brown* — involving a bicyclist who was denied participation in a cross country bicycle tour because he refused to wear a helmet — turned on whether roads upon which a cycling tour occurred could themselves be considered "places of public accommodation" to bring the organizer within title III coverage. *Id.* A road, without more, is not a "place of public accommodation" under title III. *See* 28 C.F.R. § 36.104 ("facility" definition). Brown did not plead sufficient facts for title III coverage of the organizing group because he did not show that the places in which it operated — the roads — were analogous to the twelve categories of places of public accommodation listed in title III, and he did not allege that he was denied access to a service at a place. *See* 959 F. Supp. at 499. In contrast, the gymnasiums, stadiums, and other athletic facilities that IHSA operates are undoubtedly places of public accommodation, and plaintiffs allege denial of participation in them.

Contrary to IHSA's argument, this case does not raise a question of the coverage of public accommodations that do not occupy a physical space, such as online-only stores. Plaintiffs have, indeed, alleged that IHSA operates — and controls student athletes' access to — the sectional and state tournaments held in various physical gymnasiums, stadiums, and other arenas across the state. *See* Compl. ¶¶ 7, 13, 29-32. Accordingly, IHSA falls squarely within title III's coverage and is subject to the requirements of title III. Moreover, courts have held, and the Department concurs, that a public accommodation need not itself be a physical structure to be covered by title III. *See, e.g.*, *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n*

7

*of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) (rejecting argument that title III should be limited to access to physical structures) (cited with approval by *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 558-59 (7th Cir. 1999) (same) and *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) (rejecting narrow interpretation of title III coverage)); *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, No. 11-CV-30168-MAP, 2012 WL 2343666, *2-3 (D. Mass. June 19, 2012);[3] *Shultz By & Through Shultz v. Hemet Youth Pony League, Inc.*, 943 F. Supp. 1222, 1225 (C.D. Cal. 1996). *But see, e.g., Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312 (S.D. Fla. 2002) (finding a Website is only covered if it affects access to a physical place of public accommodation); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612-13 (3d Cir. 1998) (finding no nexus between challenged insurance policy and services offered to public from insurance office).

***IHSA must comply with title III even if it operates in facilities owned by others.***

IHSA suggests that title III does not apply if the events operated by an athletic association take place in gymnasiums or stadiums owned by public entities. Def.'s Mem. Supp. Mot. Dismiss at 14. IHSA's cramped interpretation cannot be squared with the plain language of the ADA or the statute's broad purpose to eliminate discrimination against people with disabilities. *See* 42 U.S.C. § 12101(b). Nothing in the statute, regulation, or guidance exempts private entities from ADA obligations merely because the facility is owned by an entity not subject to title III. This is because title III specifically provides that the facility need only be "*operated*" by a private entity. 28 C.F.R. § 36.104 (emphasis added). Thus, where a private entity, such as IHSA, operates a facility that falls within title III's twelve identified categories —

---

[3] *See also* United States Statement of Interest, *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, No. 11-CV-30168-MAP, 2012 WL 2343666 (D. Mass. June 19, 2012), *available at* www.ada.gov/briefs/netflix_SOI.pdf ("Netflix is subject to title III of the ADA, even if it has no physical structure.").

including gymnasiums, stadiums, and places of recreation — the private entity is subject to title III's nondiscrimination mandate. To ignore the coverage of anyone who "owns, leases (or leases to) or *operates*," 42 U.S.C. § 12182(a) a place of public accommodation would, in effect, delete the term "operates" from the statute and violate the court's "duty to give effect, where possible, to every word of a statute." *See, e.g., Duncan v. Walker*, 533 U.S. 167, 174 (2001).

The Supreme Court has recognized broad coverage under title III. In *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001), professional golfer Casey Martin, who has a circulatory disability, challenged the PGA Tour's refusal to modify its rules to permit Mr. Martin to use a golf cart rather than walking the whole course. In the courts below, the PGA first argued that it was a private club and therefore exempt from the ADA, and it then argued that the golf courses themselves (as opposed to the spectator stands) were not open to the public and therefore not places of public accommodation. *See Martin v. PGA Tour, Inc.*, 984 F. Supp. 1320, 1326-27 (D. Or. 1998); *Martin v. PGA Tour, Inc.*, 204 F.3d 994, 997 (9th Cir. 2000). Although the PGA abandoned these particular arguments before Supreme Court review of the case, the Court nevertheless found that the PGA's "golf tours and their qualifying rounds fit comfortably within the coverage of [t]itle III, and Martin within its protections." *Martin*, 532 U.S. at 677. The *Martin* Court explained: "The phrase 'public accommodation' is defined in terms of 12 extensive categories, which the legislative history indicates 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." *Id.* at 676-77 (citing and quoting S. Rep. No. 101-116, at 59 (1989); H.R. No. 101-485, pt. 2, at 100 (1990)). Thus, as an operator and lessor of golf courses, the PGA was subject to title III of the ADA and could not deny Mr. Martin, on the basis of disability, the full

and equal enjoyment of the goods, services, privileges, advantages, or accommodations of the courses.[4]

Numerous federal courts have found title III applicable to athletic associations that, like IHSA, exercise control over athletes' eligibility for and participation in association-run competitions.[5] In *Bowers v NCAA*, 9 F. Supp. 2d 460, 485-88 (D.N.J. 1998), a student with learning disabilities, who was deemed academically ineligible for interscholastic athletics, challenged the NCAA's academic eligibility rules as discriminating against him on the basis of disability. Consistent with the interpretation urged by the Department as amicus, the *Bowers* Court found title III coverage. The court first noted that the term "operate" is not defined in the statute or regulation. *Id.* at 485. The court then reviewed the body of caselaw discussing the contours of title III "operation" for individuals, franchisees, and organizations sponsoring and setting standards for events taking place in facilities owned by others. *See id.* at 485-86. The

---

[4] *Martin* was informed by an Amicus Brief in support of Casey Martin, submitted by the Senators who introduced the ADA to Congress, explaining:

> As to who is prohibited from discriminating, the language [of title III] encompasses not just the owner of a place of public accommodation but 'any person who owns, leases (or leases to), or operates' such a place. Amici and other members of the 101st Congress articulated a broad nondiscrimination requirement intended to achieve the goal of affording access to persons with disabilities to all aspects of society.

Brief Amici Curiae of the Honorable Robert J. Dole, Tom Harkin, Steny H. Hoyer, James M. Jeffords, and Edward M. Kennedy in Supp. of Resp. at *8, *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) (No. 00-24), 2000 U.S. S. Ct. Briefs LEXIS 731 at **14. The *Martin* Court also noted its consistency with *Wesley v. Savannah*, 294 F. Supp. 698 (S.D. Ga. 1969), decided under title II of the Civil Rights Act of 1964, upon which title III was framed, explaining: "[T]he District Court found that a private association violated Title II when it limited entry in a golf tournament on a municipal course to its own members but permitted all (and only) white golfers who paid the membership and entry fees to compete." 532 U.S. at 681.

[5] The Department has consistently interpreted title III to apply to athletic associations. *See* United States Brief as Amicus Curiae, *Tatum v. NCAA,* 992 F. Supp. 1114 (E.D. Mo. 1998)*, available at* www.ada.gov/briefs/tatumbr.pdf*;* United States Brief as Amicus Curiae, *Butler v. NCAA,* 2001 WL 50535 (9th Cir. 2001) (No. C-96-1656), *available at* www.ada.gov/briefs/butlerbr.pdf; United States Brief as Amicus Curiae*, Bowers v. NCAA*, 974 F. Supp. 459 (D.N.J. 1997)*, available at* www.ada.gov/briefs/bowersbr.pdf; Settlement Agreement Between the United States and the Arizona Interscholastic Assoc., Inc., (2012), *available at* www.ada.gov/aia_settle.htm.

*Bowers* Court characterized the initial inquiry as whether the plaintiff "adequately alleged that NCAA 'operates,' that is, manages, controls, or regulates the place or places of public accommodation of which Bowers was allegedly denied enjoyment in such a way that the NCAA manages, controls, or regulates the allegedly discriminatory conditions of that place or those places of public accommodation." *Id.* at 486. The court concluded that Bowers had stated a claim because the alleged facts supported a finding of a nexus between the NCAA's operations and the places of public accommodation of which Bowers was denied full enjoyment. In particular, *Bowers* found coverage for the NCAA because, among others, the NCAA required that member-schools control their athletics programs in compliance with NCAA rules; regulated the sites and dates of sports events, size of fields, and playing rules in athletic facilities; and set eligibility requirements to determine whether and to what extent student athletes could participate in athletics. *See id.*; *see also Tatum v. NCAA*, 992 F. Supp. 1114, 1121 (E.D. Mo. 1998) ("The significant degree of control that the NCAA exerts over the athletic facilities of its member institutions, the position of the Department of Justice, and the relevant case law all support plaintiff's argument that the NCAA is governed by Title III of the ADA.").

Similarly, in *Ganden v. NCAA*, No. 96C-6953, 1996 WL 680000, at *11 (N.D. Ill. Nov. 21, 1996), the court found that the NCAA operates athletic facilities because it "regulates" their use, and explained: "Parties may not escape the requirements of the ADA through multiple ownership or management of a facility. The NCAA is a private entity. Regardless of whether MSU owns or operates its swimming facilities, the NCAA may also 'operate' those facilities for purposes of Title III." *See also Butler v. NCAA*, No. C96-1656D, 1996 WL 1058233 at *2-5 (W.D. Wa. Nov. 8, 1996) (operation is the critical inquiry). And in *Dennin v. Connecticut Interscholastic Athletic Conference*, 913 F. Supp. 663, 670 (D. Conn. 1996), *vacated as moot*, 94

F.3d 96 (2d Cir. 1996), the court observed that the term "operate" means "managing and controlling;" CIAC managed and controlled interscholastic athletics in Connecticut in places of public accommodation, and "[t]he fact that some of these facilities might be owned by a public entity, i.e., a public school, does not affect the conclusion that CIAC 'operates' the facilities for purposes of athletic competition." *See also Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1335 (N.D. Cal. 1994) (operates "implies a requirement of control over the place providing services" subject to title III); *Howe v. Hull*, 873 F. Supp. 72, 77 (N.D. Ohio 1994) (operate means the person or entity "is in a position of authority" to make decisions that are allegedly discriminatory under title III); *Fiedler v. Am. Multi-Cinema, Inc.*, 871 F. Supp. 35 (D.D.C. 1994) (operator of movie theater owned by another covered).

      Likewise, the Ninth Circuit has observed — in the context of an operator of a rodeo event at a publicly owned stadium — that "limiting the reach of [title III] to owners of the stadiums" would result in statutory "evasion" and "would contravene the broad inclusionary purposes of Title III, 'to extend the[] general prohibitions against discrimination to privately *operated* public accommodations and to bring individuals with disabilities into the economic and social mainstream of American life.'" *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 872-73 (9th Cir. 2004) (emphasis in original) (quoting H.R. Rep. No. 101-485(II), at 99 (1990)). Beyond the statutory language, the Ninth Circuit rested its decision on the Supreme Court's decision in *PGA Tour v. Martin*, explaining: "The [*Martin*] Court's analysis rests on the general principle that, under the statute, a place of public accommodation may be 'operated' by entities who do not own the facility and use it for a limited time period only." *Id.* at 874. [6]

---

[6] IHSA cites *Sandison v. MHSAA*, 64 F.3d 1026, 1036 (6th Cir. 1995) and *McPherson v. MHSAA*, 119 F.3d 453, 463 (6th Cir. 1997) for support that it is not covered by title III. Def.'s Mem. Supp. Mot. Dismiss. at 14. *Sandison* held and *McPherson* affirmed that a high school athletic association could not be a "place of public accommodation" under title III because the sports events were held in locations

As in these cases, Plaintiffs here have alleged sufficient facts to establish title III coverage. Not unlike the NCAA, IHSA organizes and administers all sectional, qualifying, and state championship meets for virtually all secondary schools in Illinois, Compl. ¶¶ 7, 13; it holds competitions at high school, college, or minor league stadiums or other public venues, *id.* ¶ 38; it requires that member schools "adhere explicitly" to its rules, *id.* ¶ 42; it sets eligibility criteria for athletes, hours and days for competition, and all scoring rules and qualifying standards, *id.* ¶¶ 32, 44-45. In fact, the IHSA's very existence depends on operation of high school sports events as it is "funded almost exclusively from gate receipts at state championship series events," IHSA Mot. Dismiss Ex. H, at ¶ 3. IHSA manages, regulates, controls, and sets the conditions for — i.e., operates — high school athletics in Illinois places of public accommodation. The Complaint alleges that IHSA's eligibility rules discriminate against student athletes with disabilities, including Ms. Callahan, by preventing them from fully and equally enjoying swimming, track and field, and other high school athletics. Compl. ¶¶ 14-30, 45-59. Plaintiffs have thus alleged a sufficient nexus between IHSA's operation of places of public accommodation and discriminatory activity it conducts and controls.

***The Justice Department has long interpreted title III to broadly cover entities like the IHSA.***

The principle that title III applies to entities that operate places of public accommodation, regardless of where such places are located or the duration of operation, reflects the Department's longstanding interpretation. *See* sources cited *supra* note 6. As explained in the Department's regulatory guidance: "The [title III] coverage is quite extensive and would include sublessees, management companies, and any other entity that owns, leases, leases to, or operates a place of public accommodation, *even if the operation is only for a short time*." 28 C.F.R.

---

owned by public entities. *Sandison* and *McPherson* were wrongly decided. Both cases incorrectly focus coverage on the "place of public accommodation" and not the "private entity" that "leases or operates" the place of public accommodation.

pt. 36, App. C (concerning 28 C.F.R. § 36.201) (emphasis added).  Similarly, the regulatory guidance explains that a trade association, performing artist, or an individual — not in and of themselves public accommodations — can become covered by title III when they lease space or operate places of public accommodation, such as in hotels, convention centers, or stadiums.  28 C.F.R. pt. 36, App. C (concerning 28 C.F.R. § 36.201).  In fact, the Department specifically rejected a comment during the rulemaking process that would have created an exception to coverage for short term leases.  *Id.*

As early as 1993, the Justice Department, pursuant to 42 U.S.C. § 12206, published the Title III Technical Assistance Manual, which includes the following Illustration:

> ILLUSTRATION 1: A State department of parks provides a restaurant in one of its State parks.  The restaurant is operated by X Corporation under a concession agreement.  As a public accommodation, X Corporation is subject to title III of the ADA. The State department of parks, a public entity, is subject to title II.

Title III TA Manual § III-1.7000 (1993), *available at* www.ada.gov/taman3.html.  In 1994, the Department published a Supplement to the Title III TA Manual, which explained:

> *If the owner of a building is not covered by the ADA, is it possible for a private tenant to still have title III responsibilities?*  Yes.  The fact that a landlord in a particular case is not covered by the ADA does not necessarily negate title III's coverage of private entities that lease or operate places of public accommodation with the facility.
>
> ILLUSTRATION: A Federal Executive agency owns a building in which several spaces are rented to retail stores.  Although Federal executive agencies are not covered by the ADA, the private entities that rent and operate the retail stores, which are places of public accommodation, are covered by title III.

Title III TA Manual, Supplement § III-1.2000 (1994), *available at* www.ada.gov//taman3up.html.  Thus, as these illustrations demonstrate, IHSA, as the entity "operating" tournaments, would be subject to title III regardless of whether ADA coverage might

14

also attach to the entity (public or private) that owns the facility in which the tournaments are located (and even if the "owner" is exempt from the ADA).

## CONCLUSION

For the reasons stated herein, this Court should deny IHSA's motion to dismiss. The facts alleged by Plaintiffs, which must be accepted as true at this stage of the proceedings, are sufficient to establish that IHSA is a "public accommodation" subject to the nondiscrimination requirements of title III of the ADA.

Respectfully submitted, this 25th day of July 2012.

ERIC H. HOLDER, JR.
Attorney General of the United States

GARY S. SHAPIRO
Acting United States Attorney
PATRICK W. JOHNSON
Assistant United States Attorney

THOMAS E. PEREZ
Assistant Attorney General
EVE L. HILL
Senior Counselor to the
Assistant Attorney General
Civil Rights Division

GREGORY B. FRIEL
Acting Chief
KATHLEEN P. WOLFE
Special Litigation Counsel
ROBERTA S. KIRKENDALL
Special Legal Counsel
Disability Rights Section

_____/s/_____
WILLIAM F. LYNCH, Trial Attorney
Disability Rights Section (NYA)
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Telephone: (202) 305-2008 (Lynch)
Facsimile: (202) 514-7821
E-Mail: William.Lynch@usdoj.gov

*Counsel for United States of America*

15