# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* LISA MADIGAN, Attorney General<br><br>and<br><br>M.K., by her Parent and Next Friend, JOANNE CALLAHAN,<br><br>               Plaintiffs,<br><br>               v.<br><br>ILLINOIS HIGH SCHOOL ASSOCIATION, an unincorporated association,<br><br>               Defendant. | Judge Joan B. Gottschall<br><br>Case No. 12 C 3758 |

## **MEMORANDUM OPINION & ORDER**

The plaintiffs have brought suit against the defendant, the Illinois High School Association ("IHSA"), seeking injunctive relief to prevent what they view as unlawful discrimination under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Titles II and III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12132 & 12182. IHSA has now moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the court denies the motion.

### I. B<small>ACKGROUND</small>

The plaintiffs, the Office of the Attorney General ("Attorney General") and Joanne Callahan on behalf of M.K., seek an injunction against IHSA that would require IHSA to adopt policies and procedures to allow student athletes with disabilities the chance to compete in IHSA-sanctioned events and competitions. According to the

complaint, IHSA includes 98% of Illinois public and private high schools, and these schools rely on IHSA to organize and administer their state championship meets. IHSA regulates all of the interscholastic activities in which its member schools engage: for instance, it establishes the eligibility criteria for student athletes, determines which member schools can compete in competitions, sets the times and dates during which interscholastic activities can be held, establishes scoring rules and qualifying standards for student athletes, and regulates the qualifications of coaches and officials. IHSA holds state championship competitions at ticketed venues that are open to the public, such as high school, college, or minor league stadiums. There are no other organizations that run state high school championships, so students competing as part of their high school teams must compete in IHSA-sanctioned state championships. The public high schools that are members of IHSA must be supported by public taxation, and must be recognized by the Illinois State Board of Education. IHSA itself is a recipient of federal financial assistance under the Rehabilitation Act.

IHSA has not promulgated rules that would permit athletes with disabilities to score points in interscholastic meets—in fact, according to the plaintiffs, IHSA has explicitly refused to do so—and its regulations prohibit member schools from setting their own standards or scoring systems for athletes with disabilities. As a result, students who have disabilities that prevent them from meeting existing state qualifying standards are denied the opportunity to compete in IHSA-run state championship meets. Yet IHSA itself has provided different qualifying standards for state championship meets based on gender, school size, and geography, which has resulted in multiple qualifying standards for state championship meets in every event within a sport.

Although the complaint describes a number of other disabled students,[1] the primary focus here is upon the specifics of M.K.'s experience. M.K. is a sixteen-year-old student at Fenwick High School who has physical disabilities, including lower-limb paralysis. She is substantially limited in one or more major life activities, including walking, bending, and standing; as a result, she requires the full-time use of a wheelchair. M.K. has been swimming with her high school team since her freshman year, and her high school permits her to participate in local interscholastic track and swim meets; in fact, M.K.'s swimming times place her among the top adaptive high school swimmers in the state. But M.K.'s disability prevents her from meeting the qualifying standards that IHSA has set for students without disabilities, and so she is presently unable to earn points for her team in these competitions. As a result, M.K. is excluded from participating in championship meets on behalf of Fenwick High School. M.K. wants the opportunity to qualify for the state championship meets in swimming and track and to earn points for her team during the 2012-2013 sports season.

This is not the first time the issue has been raised with IHSA. According to the complaint, representatives from the Great Lakes Adaptive Sports Association met with M.K., Fenwick High School personnel, and IHSA to discuss including athletes with disabilities in the state track and swimming championships. IHSA was presented with a written proposal requesting that IHSA modify its policies to include qualifying times for students with disabilities and include one exhibition heat for swimmers with disabilities at the state swimming championship, but IHSA did not respond to the proposal. In the

---

[1] Briefly, they are A.G., a sophomore swimmer with arthrogryposis who contended for a spot on the U.S. Paralympic Team but cannot compete in the state championship; A.H., a sixth-grade student with cerebral palsy who wants to compete in swimming, track, and triathlon via adaptive sports programs; N.N., a junior with spastic diaplegic cerebral palsy who wants to try out for the varsity swim team; and S.S., a junior with a visual impairment that will lead to complete blindness, who competes for her high school in various track events but cannot participate in the state championship.

3

spring of 2012, the Attorney General also met with IHSA in an attempt to resolve these issues. The Attorney General proposed that IHSA set up exhibition heats for wheelchair racers and allow these athletes to compete in the shot put and discus as a "first step" while the parties continued to discuss long-term goals for including athletes with disabilities in interscholastic sports. IHSA's Executive Director expressed concern that IHSA would be exposed to liability if it opened up one sport but not others, but indicated that the proposal was reasonable. Instead of responding to that proposal, however, IHSA ultimately filed suit against the Attorney General.[2]

The plaintiffs responded by filing their own lawsuit in this court. They claim that IHSA has discriminated against M.K. and other students with disabilities in violation of the ADA and the Rehabilitation Act by failing to provide them with the full and equal opportunity to participate in sports in an integrated setting despite the fact that these students are qualified to do so. They further allege that IHSA has violated federal law by failing to conduct a proper individualized assessment of the ability of M.K. and other students with disabilities to participate, failing to engage in the interactive process to determine if any reasonable accommodations or modifications are required, failing to provide any reasonable accommodations or modifications, failing to provide any appeal or grievance opportunities, and otherwise failing to comply with the ADA and the Rehabilitation Act. IHSA has now moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that IHSA (1) does not receive any federal funding as required under the Rehabilitation Act, (2) is not a "public entity" as required under Title

---

[2] As one of the grounds for dismissal, IHSA had argued that this case was duplicative of this earlier-filed case. *See Ill. High Sch. Ass'n v. Lisa Madigan*, Case No. 12 C 1155 (C.D. Ill. filed May 17, 2012). However, that court recently determined that this jurisdiction was the "more appropriate forum" for the dispute, and transferred the case to this court on July 13, 2012. In response, IHSA has now conceded that this portion of its motion is moot. (*See* Def.'s Reply in Supp. at 2.)

4

II of the ADA, and (3) is not a "place of public accommodation" as required under Title III of the ADA. In addition to the plaintiffs' opposition, the Department of Justice's Civil Rights Division ("the DOJ") has also filed a "Statement of Interest" under 28 U.S.C. § 517, and argues that IHSA operates as a place of public accommodation and falls squarely within the coverage of Title III. The court addresses each issue in turn.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the defendant may seek to dismiss the case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). But although Federal Rule of Civil Procedure 8(a) requires that the complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," nonetheless the complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 566 U.S. 662 (2009) (noting that while Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, to survive a motion to dismiss post-*Twombly*, "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo*

5

*Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)).

### III. ANALYSIS

IHSA has moved to dismiss on three grounds, each of which is relevant to a single count. The court begins with Count I, in which the plaintiffs allege that IHSA violated Section 504 of the Rehabilitation Act.

**A. The Rehabilitation Act**

Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In their complaint, the plaintiffs allege that IHSA receives federal financial assistance, and that IHSA receives "state and federal funding indirectly through participating schools." (*See* Compl. ¶¶ 33, 79.) But IHSA claims it does not receive federal funding that would make it subject to Section 504, and because there is no cost to member schools to join IHSA, it does not receive federal funds indirectly. In support of its argument, IHSA cites to allegations from its earlier complaint, as well as an affidavit from Marty Hickman, the Executive Director of IHSA, in which Mr. Hickman states that IHSA "receives no federal funding of any kind."

This court may not consider matters beyond the pleadings unless it wishes to convert the motion into one for summary judgment and to provide the parties "a reasonable opportunity to represent all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see McCready v. eBay, Inc.*, 453 F.3d 882, 891-92 (7th Cir. 2006). This

court does not intend to do so, and therefore it declines to consider facts beyond those set forth in the plaintiffs' complaint. Turning to those facts, IHSA argues that the plaintiffs have failed to state a claim for relief because the plaintiffs have provided conclusory allegations that do not satisfy the *Twombly* pleading standard. But although *Twombly* requires enough detail to push the claims into plausibility, it does not require this court to determine whether each fact alleged is actually true. *See Estate of Davis*, 633 F.3d at 533. Here, the plaintiffs have alleged that IHSA receives federal funding indirectly via its member schools. And even if IHSA is correct in arguing that indirect funding is not sufficient to state a claim for relief under the Rehabilitation Act—an issue which this court need not decide, and which does not appear to have been decided in the Seventh Circuit—the plaintiffs have also alleged that IHSA directly receives such funds. (*See* Reply in Supp. of Mot. at 4 (citing *Icehouse Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965 (N.D. Ill. 2001) and *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999).) These facts are sufficient to allege that IHSA is subject to the Rehabilitation Act.

**B. Title II**

In Count II of their complaint, the plaintiffs allege that IHSA violated Title II of the ADA, 42 U.S.C. § 12132, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The plaintiffs further allege that "[b]ecause IHSA's membership is comprised mostly of public high schools, and because it receives state and federal funding indirectly through participating schools, IHSA is a public entity." Citing an Illinois case that determined IHSA was not a "local public

7

entity" for purposes of tort immunity, *see Hood v. Ill. High Sch. Ass'n*, 835 N.E.2d 938 (Ill. App. Ct. 2005), IHSA responds that it is an unincorporated voluntary association of public and private schools, and that it is not "related in any way to state or local government," which means that it cannot be a "public entity" under Title II. (*See* Mem. in Supp. at 12.) IHSA argues that it would be "mere speculation" for this court to infer that IHSA is a public entity under the circumstances.

The ADA defines a "public entity" in relevant part as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). The plaintiffs have alleged facts that plausibly suggest that IHSA is a public entity: specifically, they have alleged that about 98% of Illinois schools are members of IHSA, that all Illinois public high schools are supported by public taxation and are recognized by the Illinois State Board of Education, and that IHSA oversees those schools' interscholastic high school sports programs in a very detailed manner. These facts suggest that IHSA is an "instrumentality of a State or States or local government." Moreover, the court has been provided with no reason to apply the Illinois state-court decision regarding tort liability to this case. By contrast, in reasoning that is significantly more applicable to the case at hand, the Seventh Circuit has held that IHSA is a state actor under 42 U.S.C. § 1983. *See Griffin High Sch. v. Ill. High Sch. Ass'n*, 822 F.2d 671, 674 (7th Cir. 1987) ("Public schools make up 85% of the IHSA's membership, and although the IHSA is a purely voluntary association, the overwhelmingly public character of the IHSA membership is sufficient to confer state action for the purposes of § 1983."). In short, the plaintiffs have pleaded sufficient facts to state a claim under Title II.

**C. Title III**

Finally, in Count III the plaintiffs have alleged that IHSA violates Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). IHSA has moved to dismiss on the ground that it is not a "place of public accommodation" and therefore is not subject to Title III. It argues that this phrase refers only to a physical structure, and not an organization that promotes athletic events. Again citing to Mr. Hickman's affidavit, IHSA also claims that all of the events identified in the complaint are events held in public places operated by public entities, and that Title III is only designed to protect disabled persons from unequal enjoyment of public places operated by private entities.

With regard to the latter point, the court has already explained that it will not credit additional facts set out in Mr. Hickman's affidavit at this stage in the litigation. Looking only to the facts set out in the complaint, in addition to M.K. there are a number of other students who attend undisclosed schools who wish to participate in various IHSA-run events. The complaint does not include facts that would establish that all of the events at issue are held in places operated by public entities. This argument, therefore, is unavailing.

As to the former issue, the plaintiffs argue that they have alleged IHSA regulates all of the interscholastic activities in which its member schools engage, and that IHSA's events are held at various venues that are ticketed and open to the public, which is all that

9

they need to do at this point to state a claim for relief. The DOJ has also filed a brief supporting the plaintiffs' position.[3] In its brief, the DOJ points out that its regulations define a "place of public accommodation" as "a facility operated by a private entity whose operations affect commerce and fall within" various categories, including gymnasiums or other place of exercise or recreation, schools or other places of education, and stadiums or other places of exhibition or entertainment. *See* 28 C.F.R. § 36.104; *see also* 42 U.S.C. § 12181(7) (defining certain classes of private entities to be "public accommodations" under the statute, including the categories of places listed above). Thus, the DOJ argues that IHSA "operates" places of public accommodation due to IHSA's involvement with the facilities in which IHSA's meets and championships are held, including stadiums, gymnasiums, arenas, courts, pools, and tracks. The DOJ further argues that a "public accommodation" does not require a physical structure.

The court does not need to decide whether a public accommodation needs to be a physical structure in order to determine that the plaintiffs' complaint survives this motion to dismiss. *See, e.g.*, *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998) (restricting "public accommodation" to physical places and noting that by doing so, it was parting ways with the First Circuit). As IHSA points out, at least one court in this district has held that "[a]lthough the ADA certainly was enacted with the intention of prohibiting discrimination against persons with disabilities, the language in question refers to 'facility' which appears clearly to be defined as a physical structure." *Brown v. 1995 Tenet ParaAm. Bicycle Challenge*, 959 F. Supp. 496, 498 (N.D. Ill. 1997). In

---

[3] Because the DOJ was directed by Congress to issue implementing regulations for Title III and to enforce Title III in court, the DOJ's regulations and interpretations thereof are entitled to deference. *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (citing *Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

*Brown*, the court reasoned that the defendants were less analogous to the places of public accommodation specifically described in the statute and were more analogous to other "umbrella groups that organized an event," such as a professional football league. But *Brown* also relied in part upon facts not present here: the event in question was a bicycling event that took place on the roadways, and was therefore not connected to a place of public accommodation. *Id.* at 498-99. In other words, the issue was whether the defendant organizations themselves were places of public accommodation.

  Here, by contrast, the relevant question is whether the plaintiffs have sufficiently alleged that IHSA "owns, leases (or leases to), or operates a place of public accommodation." *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 483-84 (D.N.J. 1998) ("[I]n statutory terms, the mountaintop question for determining whether a private entity is subject to section 12182(a) is: Is the defendant a person who owns, leases (leases to), or operates a place of public accommodation?"); *Tatum v. Nat'l Collegiate Athletic Ass'n*, 992 F. Supp. 1114, 1121 (E.D. Mo. 1998) (distinguishing between cases that "deal[ ] with member organizations *as organizations*," which would require a determination of whether the organization could constitute a "public accommodation," and cases that deal with "operators of facilities that might, in turn be considered places of public accommodation"). The court concludes that the plaintiffs have met their obligation in this regard.

  Precisely what level of control must be exercised to say that IHSA "operates" the various public accommodations in which IHSA-sanctioned meets and championships take place is not clear at this time. But the plaintiffs have alleged that IHSA regulates all of the interscholastic activities in which its member schools engage, establishes the

11

eligibility criteria for student athletes, determines which member schools can compete in competitions, sets the times and dates during which interscholastic activities can be held, establishes scoring rules and qualifying standards for student athletes, and regulates the qualifications of coaches and officials. These facts suffice to plausibly allege that IHSA operates a place of public accommodation such that it could be subjected to liability in the event that it violates Title III.

### IV. CONCLUSION

For the reasons set forth above, this court denies IHSA's motion to dismiss in its entirety.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 17, 2012